United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 11, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-60368

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARCUS ROBERSON, a/k/a "LOCO",

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Mississippi
(02-CR-76)

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Appellant Marcus Roberson, a/k/a "Loco," was convicted of felony possession of a firearm that had been transported in interstate commerce in contravention of 18 U.S.C. § 922(g)(1). Roberson appeals his conviction on several grounds, including his assertion that the district court reversibly erred by permitting the Government to use Roberson's nickname at trial. For the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

reasons set forth below, we AFFIRM Roberson's conviction.

### BACKGROUND & PROCEDURAL HISTORY

On June 12, 2002, Marcus Roberson was indicted under 18 U.S.C. § 922(g)(1) on one count of being a felon, i.e., a person who had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in possession of a firearm that had been transported in interstate commerce. On July 25, 2002, a Superceding Indictment issued, this time charging Marcus Roberson a/k/a "Loco" with two counts of being a felon in possession of a firearm that had previously been transported in interstate commerce. Count One specifically referred to possession of a Jennings .380 caliber semi-automatic pistol on July 1, 1999, while Count Two related to Roberson's alleged possession of a 9mm pistol on or about December 24, 1999.

Roberson entered a plea of not guilty, and the case was set for trial in Greenville, Mississippi on March 31, 2003. The commencement of trial was held over four times on account of Roberson's filing of four motions for continuance. The trial was ultimately rescheduled to begin on December 1, 2003, in Oxford, Mississippi. Roberson did not object to the new venue ordered by the district court. Before and during trial, Roberson filed several motions seeking various forms of relief. On November 26, 2003, Roberson filed a motion seeking to admit into evidence residual hearsay in the form of a statement from an alleged witness

to the underlying incident, who allegedly could not be found to be served with a subpoena. The district court denied the motion, finding that the witness's submitted affidavit did not contain the circumstantial guarantees of trustworthiness sufficient to satisfy the relevant hearsay exceptions. Then, on the first day of trial, Roberson filed a motion in limine in which he requested the district court to exclude any mention or reference to the nickname "Loco" in identifying or referring to Roberson. The district court again denied the motion.[2]

On December 5, 2003, having considered the evidence presented before it, the jury returned a verdict finding Roberson guilty of Count Two of the Superseding Indictment. On April 16, 2004, Roberson was sentenced to 120 months' imprisonment followed by a term of three years' supervised release and a special assessment of $100. Roberson timely filed the instant appeal.

### DISCUSSION

**I.   Whether the district court abused its discretion by permitting use of Roberson's nickname "Loco" at trial.**

On appeal, Roberson argues that the use of his nickname, "Loco," at trial was highly prejudicial and not probative of any material or relevant fact. In response, the Government maintains that reference to Roberson's nickname was necessary to connect him

---

[2] Roberson successfully filed two other motions in limine, which excluded any mention of the details of his prior felonies and excluded any reference to instances of firearms possession on any occasion other than December 24, 1999.

3

with the offense charged because the witnesses to the underlying crime knew Roberson by his nickname, Roberson referred to himself as "Loco," and because the nickname itself was not suggestive of a criminal disposition.

We review the district court's determination that use of a defendant's alias at trial is more probative than prejudicial for an abuse of discretion. United States v. Stowell, 947 F.2d 1251, 1255 (5th Cir. 1991).

In United States v. Dean, 59 F.3d 1479 (5th Cir. 1995), this Court explored the propriety of using a defendant's nickname at trial. In Dean, several witnesses testified at trial using the defendant's nickname, "Crazy K," to identify him. Id. at 1491-92. In addition, the prosecution attorneys and the attorney for a co-defendant referred to the defendant's nickname during the course of the trial. Id. This Court determined that such use is appropriate if it can be established that the witnesses knew the defendant by that name. Id. at 1492. The witnesses in Dean knew the defendant by his nickname, and the attorneys' use of the defendant's nickname was done primarily to distinguish between the two co-defendants who shared the same first name. Id. The Court also found persuasive the Government's argument that "the nickname 'Crazy K' is not necessarily suggestive of a criminal disposition." Id. at 1492.

Here, several witnesses called by the Government made references identifying Roberson as "Loco." For instance, the owner of a car wash located next door to the hotel where the underlying

4

incident occurred, testified that Shada Young, an eyewitness to the crime, ran up to the car wash and proclaimed that "Loco just shot Frank." In addition, the first police officer to arrive at the scene testified at trial that Young immediately told him that "Loco shot him, man." There were two additional Government witnesses who testified that they referred to Roberson as "Loco." The Government attorney also referenced Roberson's nickname during closing arguments.[3] In addition, the Government introduced handwritten letters by Roberson to establish that the handwriting found on evidence at the crime scene was that of Roberson's. The letters, written by Roberson to his girlfriend, were both signed "Loco."

Because the Government witnesses who testified at trial knew Roberson as "Loco," because Roberson referred to himself by his nickname, and because we conclude the nickname "Loco" is not suggestive of a criminal disposition, we hold the district court did not abuse its discretion when it denied Roberson's motion seeking to exclude any reference to his nickname at trial.

## II. Whether the district court reversibly erred by not admitting into evidence residual hearsay offered by Roberson.

Roberson filed a pre-trial motion with the district court

---

[3] The Government attorney stated during closing arguments that Roberson may have lived up to his nickname when he possessed the firearm that was eventually used to shoot the victim. However, Roberson did not object to the Government's closing argument nor did he seek a limiting instruction on the matter. Nevertheless, the statement cannot be read as suggesting that Roberson was a criminal or guilty of the offense charged simply because he went by or "lived up to" the nickname "Loco."

seeking to admit into evidence residual hearsay in the form of an affidavit from an individual who was an alleged witness to the underlying crime. The district court denied the motion, finding that the affidavit did not contain the circumstantial guarantees of trustworthiness necessary to be admitted under the catch-all hearsay exception found in Federal Rule of Evidence 807.[4]

We apply a highly deferential standard of review in evaluating a district court's determination regarding the admission of statements under the residual hearsay exception. <u>Rock v. Huffco Gas & Oil Co., Inc.</u>, 922 F.2d 272, 281 (5th Cir. 1991). "We will not reverse the district court's finding 'absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors.'" <u>Id.</u> (citing <u>Page v. Barko Hydraulics</u>, 673 F.2d 134, 140 (5th Cir. 1982)).

The hearsay in question is the affidavit of an unavailable

---

[4] Federal Rule of Evidence 807 provides, in pertinent part,:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

FED. R. EVID. 807.

witness, Daryl Metcalf, who gave statements to both a prosecution investigator and one of Roberson's former attorneys. In the affidavit, Metcalf claims to have witnessed the underlying crime, but states that another individual, not Roberson, was the person who possessed the firearm used to commit the offense.

Because Metcalf could not be found to be served a subpoena, his affidavit could only have been admitted under Rule 807. This Court has previously announced that the exception found in Rule 807 is to be used rarely, in only truly exceptional cases. United States v. Phillips, 219 F.3d 404, 419 n.23 (5th Cir. 2000). Roberson also bears a heavy burden to come forward with indicia of trustworthiness and probative force. Id.

The district court concluded that Roberson did not carry this heavy burden, noting numerous credibility issues with the proffered affidavit. For instance, the district court observed that the affidavit itself was three years old, was submitted by an individual who had been convicted of five prior felonies, and contained a notarization that was suspect in that the identity of the notary was not known and the signature line for the notary contained an illegible signature. In addition, the district court found it particularly relevant that Metcalf could not be located, even through the diligent efforts on the part of investigators and police officers, and thus could not be cross-examined.

We conclude that, based on the foregoing reasons, the district court properly determined that the residual hearsay offered by

7

Roberson did not contain the circumstantial guarantees of trustworthiness necessary to be admitted under Rule 807.

**III. Whether the district court reversibly erred by transferring the case to a division different from that where the offense allegedly occurred.**

Roberson maintains he was denied a jury consisting of a fair and random cross-section of the applicable jury division when the district court transferred the trial from Greenville, Mississippi, located in the Northern District of Mississippi, to Oxford, Mississippi, also located in the Northern District. The Government responds that there is no right to have a case tried within any particular jury division, and that Roberson nevertheless failed to object to the transfer until the jury had already been impaneled and the Government had rested its case-in-chief.

Because a district court has broad discretion in deciding whether to transfer venue, we review such decisions for an abuse of discretion. United States v. Harris, 25 F.3d 1275, 1277-78 (5th Cir. 1994). "Reversal of an intradistrict transfer is proper only if a party demonstrates a 'substantial ground for overturning the district court's decision.'" United States v. Lipscomb, 299 F.3d 303, 339 (5th Cir. 2002) (citing United States v. Dickie, 775 F.2d 607, 609 (5th Cir. 1985)).

Whether a transfer to another division is appropriate is generally governed by Federal Rule of Criminal Procedure 18, which provides:

8

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

FED. R. CRIM. P. 18. This Court has determined that factors such as security may also be considered by a district court when deciding whether to transfer a case. For instance, in Lipscomb, the Court recognized that the amount of jail space for defendants and witnesses is a factor that falls under the "prompt administration of justice" prong of Rule 18. 299 F.3d at 343 (citing United States v. McKinney, 53 F.3d 664, 673 (5th Cir. 1995)).

This Court was previously presented with an almost identical scenario in Harris, where the district court moved the trial from Greenville to Oxford, citing concerns over security problems and noting that the facilities in Oxford were better equipped to handle such situations.[5] 25 F.3d at 1278. The district court specifically observed that Oxford was the headquarters of the United States Marshals Service and explained that moving criminal trials there was the normal procedure in cases that required more than ordinary security. Id. The district court also cited scheduling issues that made Oxford the more convenient venue to expeditiously handle the cases before it. Id. On appeal, this Court concluded that the district court's assessment of the

_____

[5]The security concerns in Harris involved issues relating to possible gang-related violence.

9

security risks and the state of the court's docket was sufficient to warrant a transfer. Id.

Likewise, in the instant case, the district court specifically made reference to security considerations, noting that the facilities in Greenville were inadequate to accommodate witnesses, two of whom were incarcerated at the time.[6] The district court also observed that the detention center in Oxford provided both ample physical facilities to conduct the trial as well as access to more federal marshals for general security purposes. It was also revealed that the witnesses to the charged offense resided closer to Oxford than Greenville, Roberson's attorney resided and worked in Oxford, and Roberson himself, along with two other witnesses, were in custody at the time.

Based on the foregoing reasons and because Roberson has failed to come forward with any substantive evidence demonstrating that he or the witnesses were inconvenienced by the transfer, we conclude that the district court did not abuse its discretion when it transferred the trial from Greenville to Oxford.

## CONCLUSION

Having carefully reviewed the entire record of this case and having fully considered the parties' respective briefing, we

---

[6] Like the case in Harris, the underlying incident here involved a gang-related dispute. The offense occurred in Clarksdale, Mississippi, located approximately 60 miles from Oxford and 70 miles from Greenville.

conclude that the district court did not abuse its discretion in permitting the use of Roberson's nickname at trial nor did it err in not admitting into evidence Roberson's residual hearsay evidence. Moreover, Roberson was not prejudiced when the district court transferred the trial from Greenville, Mississippi to Oxford, Mississippi. Accordingly, Roberson's conviction is **AFFIRMED**.